IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Kristal G. Keith, | ) |
|                Plaintiff, | ) Civil Action No.: 8:17-cv-02554-JMC |
| v. | ) **ORDER AND OPINION** |
| Commissioner of Social Security Administration, | ) |
|                Defendant. | ) |

Before the court for review is the Magistrate Judge's Report and Recommendation ("Report") filed on October 22, 2018 (ECF No. 24). The Report addresses Plaintiff Kristal G. Keith's claim for supplemental security income ("SSI") and recommends that the court reverse the decision of the Commissioner of Social Security Administration ("the Commissioner"), which denied Plaintiff's claim. (ECF No. 24 at 1.) For the reasons stated herein, the court **ACCEPTS IN PART** and **REJECTS IN PART** the Report, and **REVERSES** and **REMANDS** this matter for further administrative opinions consistent with this Order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Report sets forth the relevant facts and legal standards, which this court incorporates herein without a full recitation. (ECF No. 24 at 1–20.) As background, Plaintiff filed an application for SSI on May 19, 2011, which was denied initially by the Commissioner. (*Id.* at 1.) After an administrative hearing on November 13, 2012, an administrative law judge ("ALJ") issued an unfavorable decision against Plaintiff on December 13, 2012, finding Plaintiff was not disabled under the Social Security Act. (ECF No. 10-2 at 13, 16.) Plaintiff requested review of the decision by the Appeals Council ("the Council"), which, on April 14, 2014, was denied. (*Id.*

at 2.) Plaintiff sought judicial review of the ALJ's decision by the United States District Court for the Western District of Pennsylvania,[1] which vacated the ALJ's decision and remanded the matter for further consideration. (ECF No. 10-14 at 5–15.) Pursuant to the court's remand order, the Council vacated the December 2012 decision of the Commissioner and remanded the case to the ALJ "for further proceedings consistent with the order of the court." (*Id.* at 15.)

On remand, the ALJ held administrative hearings on October 13, 2015, and February 25, 2016. (ECF No. 10-13 at 36–38, 62–64.) On March 30, 2016, the ALJ issued a second unfavorable decision against Plaintiff. (*Id.* at 14.) The ALJ determined that Plaintiff "d[id] not have an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments in . . . 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR [§§] 416.920(d), 416.925 and 416.926)." (*Id.* at 20.) Additionally, Plaintiff had the RFC

> to perform light work[2] . . . except:
> - [Plaintiff] can only occasionally climb ladders, ropes or scaffolds and kneel
> - [Plaintiff] can frequently climb ramps, stairs, balance, crouch and crawl
> - [Plaintiff] is limited to work in a low stress[,] stable work environment with few[,] if any[,] changes in work processes in which [Plaintiff] would not have to perform more than routine, repetitive tasks requiring no more than a 4th grade reading or math level, involving simple work[-]related decisions and short, simple instructions, that could be given orally and by demonstration
> - [Plaintiff] cannot engage in production rate pace
> - [Plaintiff] cannot interact with the public
> - [Plaintiff] can engage in only occasional interaction with co-workers and supervisors and cannot work on a team

(*Id.* at 23–24.) After considering Plaintiff's RFC, age, education, and work experience, the ALJ determined that through the date last insured, "there [we]re jobs that existed in significant numbers

---

[1] Plaintiff lived in Pittsburgh, Pennsylvania, until October 2015 when she moved to South Carolina. (ECF No. 10-13 at 40.)
[2] "Sedentary work requires the ability to sit for 6 hours, stand for 2 hours, and walk for 2 hours each in an 8-hour workday." (ECF No. 8-3 at 18 n.6.)

in the national economy that [Plaintiff] c[ould] [have] performed." (*Id.* at 28.) On this basis, the ALJ denied SSI to Plaintiff because she was not disabled under the Social Security Act "since May 19, 2011, the date the application was filed." (*Id.* at 29.)

Plaintiff requested review of the ALJ's decision by the Council, which was denied on December 19, 2016. (*Id.* at 6.) Thus, the ALJ's decision became the final decision of the Commissioner. (*Id.*) *See also Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011) (stating that an ALJ's decision was the final decision of the Commissioner when the Council denied a request for review); *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) (holding that the Commissioner's "final decision" includes when the Council denies a request for review of an ALJ's decision).

Plaintiff filed the instant action on September 22, 2017, seeking judicial review of the Commissioner's final decision. (ECF No. 1.) Plaintiff asserted one error by the ALJ: "[t]he ALJ failed to adequately consider whether Plaintiff met the requirements of Listing 12.05C, and the evidence establishes she met this [L]isting." (ECF No. 19 at 1.) Plaintiff argues

> [t]he ALJ's evaluation of Listing 12.05C evinces obvious error, in that he entirely failed to consider whether Plaintiff demonstrated "deficits in adaptive functioning *initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22*." 20 C.F.R. Part 404, Subpart P, Appx. 1, § 12.05C (eff. August 12, 2015 to May 23, 2016) (emphasis added). The ALJ's conclusory statement that Plaintiff "show[ed] significant independence of functioning" did not suffice to adequately consider whether she showed the required deficits in adaptive functioning.

(*Id.* at 18.)

The Commissioner filed a Brief on May 14, 2018, arguing

> Plaintiff's argument is unpersuasive because she fails to appreciate that Prong 1 has two components. If the ALJ finds: (1) "no deficits in adaptive functioning generally," or (2) "no deficiency manifested itself before the age of 22," then "[e]ither finding alone, if supported by substantial evidence, would be sufficient to support the conclusion that [the claimant] did not satisfy Prong 1." *Hancock v.*

3

>*Astrue*, 667 F.3d 470, 475 (4th Cir. 2012). Here, [the] ALJ . . . focused on the first component, "no deficits in adaptive functioning generally." [The] ALJ . . . did not address the second component ("no deficiency manifested itself before the age of 22") because Plaintiff failed the first component, and therefore, Plaintiff's condition did not satisfy Prong 1 as a matter of law.

(ECF No. 21 at 1.) The Commissioner also argues "Plaintiff has not challenged the ALJ's findings with respect to the evidence related to her 'deficits in adaptive functioning generally,' and therefore, her argument fails and she has waived the issue." (*Id.* at 10.)

Plaintiff filed a Reply Brief on May 29, 2018. (ECF No. 22.) As to the Commissioner's waiver argument, Plaintiff asserts that her Brief

> clearly argues that she maintained current deficits in adaptive functioning, including that she could read only basic children's books and did not understand most of the words, she could not pass a driver's permit test because she could not understand the questions, she could not read a newspaper, she could not add or subtract without the aid of a calculator, she could not multiply or divide, and she could not make change when purchasing items at a store.

(*Id.* at 2–3.)

The Magistrate Judge entered her Report on October 22, 2018. (ECF No. 24.) First, the Magistrate Judge observed that the United States Court of Appeals for the Fourth Circuit has established a three-prong test to prove intellectual disability under Listing 12.05(C). (*Id.* at 18.) The first prong (Prong 1) "consists of two separate elements—deficits in adaptive functioning generally and a deficiency that manifested itself before age 22." (*Id.* (citing *Hancock v. Astrue*, 667 F.3d 470, 473, 475 (4th Cir. 2012)).) As for the remaining prongs, the Magistrate Judge explained that

> [p]aragraph C "requires '[a] valid verbal, performance, or full scale IQ of 60 through 70' ('Prong 2'), as well as 'a physical or other mental impairment imposing an additional and significant work-related limitation of function' ('Prong 3')." *Id.* at 473 (alteration in original). "Once it is established that the claimant's IQ falls within the range required by § 12.05(C), the inquiry is whether the claimant suffers from any additional physical or mental impairment significantly limiting work-related functions." *Kennedy v. Heckler*, 739 F.2d 168, 172 (4th Cir. 1984). "An

impairment which imposes an additional and significant work-related limitation of function is any impairment which is defined as severe." *Odom v. Colvin*, No. 1:14-cv-00576-JMC, 2015 WL 3560685, at *4 (D.S.C. Jun. 5, 2015) (citing 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 12.00(A)).

(*Id.* at 18–19.) The Magistrate Judge found "the ALJ addressed only Prongs 1 and 2, and the [c]ourt cannot find that substantial evidence supports the ALJ's conclusion." (*Id.* at 20.) As to the first prong, the Magistrate Judge found that beyond referencing Plaintiff's "significant independence of functioning," the ALJ gave no explanation for finding Plaintiff did not have deficits in adaptive functioning. (*Id.* at 21 (quoting ECF No. 10-13 at 23).)

The Magistrate Judge then observed several facts from the record, for example, Plaintiff's repeating first and ninth grade, that did not appear in the ALJ's decision. (*Id.*) As to Prong 2, the Magistrate Judge found "the ALJ failed to make a specific finding regarding Plaintiff's IQ score," and stated only that "[t]he record contains conflicting IQ scores." (*Id.* at 22.) But according to the Magistrate Judge, the ALJ referenced March 2004 IQ scores,[3] but did not include a record citation for the scores, and the Magistrate Judge was "unable to find the March 2004 IQ scores in the record before the [c]ourt." (*Id.*) Therefore, the Magistrate Judge concluded she could not determine the accuracy of the ALJ's statement that "[t]he record contains conflicting IQ scores." (*Id.* at 22 (quoting ECF No. 10-13 at 23).) Furthermore, the Magistrate Judge observed that the ALJ did not "resolve[] the conflict between what he found to be conflicting IQ scores," but stated only that "even if Plaintiff had 'valid IQ scores in the 60-70 range she still does not meet the required limitations in adaptive functioning.'" (*Id.* (quoting ECF No. 10-13 at 23).) Thus, the Magistrate

---

[3] The ALJ's decision states that Plaintiff had the following IQ scores in March 2004: a verbal score of 79, a perceptual reasoning score of 71, a working memory score of 80, a processing score of 85, and a full-scale score of 80. (ECF No. 10-13 at 23.)

5

Judge found "the [c]ourt c[ould] [not] find the ALJ's determination that Plaintiff did not have deficits in adaptive functioning is supported by substantial evidence." (*Id.* at 22–23.)

After a review of the record, the Magistrate Judge determined Plaintiff "experienced deficits in adaptive functioning that manifested themselves before age 22"; "had a valid verbal, performance, or full scale IQ of 60 through 70"; and "has a physical or other mental impairment imposing an additional and significant work related limitation of function." (*Id.* at 24–28.) Therefore, the Magistrate Judge concluded "an outright award of benefits is appropriate" and recommends reversing the decision of the Commissioner and remanding the case to the Commissioner for an award of benefits to Plaintiff. (*Id.* at 28.)

The Commissioner filed an Objection to the Magistrate Judge's Report on November 5, 2018. (ECF No. 26.) First, the Commissioner objects to "[t]he Magistrate Judge conflat[ing] the two separate components of Prong 1 of the intellectual disability listing and . . . reweigh[ing] the evidence." (*Id.* at 1.) The Commissioner argues that under *Hancock v. Astrue*, "[i]f the ALJ finds: (1) 'no deficits in adaptive functioning generally,' or (2) 'no deficiency manifested itself before the age of 22,' then '[e]ither finding alone, if supported by substantial evidence, would be sufficient to support the conclusion that [the claimant] did not satisfy Prong 1.'" (*Id.* at 1–2 (quoting *Hancock*, 667 F.3d at 475).) Thus, the Commissioner maintains that "regardless of whether Plaintiff's condition met Prongs 2 . . . or 3 . . ., substantial evidence supported the ALJ's decision that [Plaintiff] has not proven the first component of Prong 1 . . . and therefore, her claim fails." (*Id.* at 2.)

Additionally, in response to the Magistrate Judge's finding that the ALJ did not adequately explain his determination that Plaintiff did not have deficits in adaptive functioning, the Commissioner notes that "[s]everal paragraphs [before concluding Plaintiff did not have deficits

6

in adaptive functioning] the ALJ discussed the referenced supporting daily activities that showed 'significant independence of functioning.'" (*Id.* at 3.) The Commissioner further notes that the ALJ "stated he discussed independence elsewhere in his decision." (*Id.*) Also, the Commissioner argues "the medical opinions supported the ALJ's findings regarding the 'deficits in adaptive functioning generally.'" (*Id.* at 3.)

Second, the Commissioner objects that "reversal for payment of benefits is not warranted because the ALJ – not the court – must weigh the evidence in the first instance." (*Id.* at 5.) The Commissioner argues that even if the ALJ improperly found Plaintiff did not meet Prong 1, "[r]eversal for payment of benefits is not the appropriate remedy" because "reversal for payment of benefits is appropriate only when 'uncontroverted evidence' reveals that the claimant is disabled." (*Id.* at 6 (quoting *Evans v. Heckler*, 734 F.2d 1012, 1015 (4th Cir. 1984).) The Commissioner further argues that "[t]his case does not meet that standard," noting the Magistrate Judge's finding that "the ALJ failed to resolve the conflict between the conflicting IQ scores as would be required in evaluating Prong 2."[4] (*Id.* (citing ECF No. 24 at 22).) Therefore, the Commissioner requests that the court affirm the ALJ's decision or, alternatively, remand this case "so that the ALJ can make the requisite factual findings in the first instance." (*Id.*)

Plaintiff filed a Reply to the Commissioner's Objection on November 19, 2018.[5] (ECF No. 27.) First, Plaintiff

> notes that in *Hancock*, the [Fourth Circuit] cited to no authority for the proposition that a supported finding of no deficits *generally* could equate to a finding of no deficits manifesting prior to age 22, where the statute's *explicit language* states that the deficits *must manifest prior to age 22*.

---

[4] The Commissioner asserts that "it appears that [the March 2004 IQ scores] may have been inadvertently omitted from the record." (ECF No. 26 at 6.)
[5] Many of the arguments in Plaintiff's Reply (ECF No. 27) were raised by Plaintiff in her Reply Brief (ECF No. 22). (*Compare* ECF No. 22, *with* ECF No. 27.)

7

(*Id.* at 1.) Plaintiff asserts that she "does not concede that the plain statutory language allows for such an interpretation, but regardless, as argued in her primary brief, Plaintiff did exhibit deficits in adaptive functioning well beyond age 22, which distinguishes this case from *Hancock* on its facts." (*Id.* at 1–2.) Second, Plaintiff argues the Fourth Circuit's statement in *Hancock* that a supported finding of no deficits generally could equate to a finding of no deficits manifesting prior to age 22 is dicta, and not binding on this court. (*Id.* at 2.) As to the Commissioner's second objection, Plaintiff argues "[t]he substantial evidence of record, however, establishes that Plaintiff met Listing 12.05C, and remand for further proceedings would serve no useful purpose in this case," noting that "Plaintiff's application was filed in May of 2011 and her case has been pending through one prior appeal to and remand from a United States District Court." (*Id.* at 5, 6.) Therefore, Plaintiff requests that the court adopt the Report and remand this case only for the calculation and payment of benefits. (*Id.* at 6.)

## II. STANDARD OF REVIEW

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court, and that recommendation has no presumptive weight. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The responsibility to make a final determination remains with the court. *Id.* at 271. As such, the court is charged with making de novo determinations of those portions of the Report to which specific objections are made. *See* 28 U.S.C. § 636(b)(1). *See also* Fed. R. Civ. P. 72(b)(3). Thus, the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

8

The Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). While the court is free to conduct a de novo review of the Report, the court's review of the Commissioner's final decision is "limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir. 1985)). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). When assessing whether the ALJ possessed substantial evidence, the court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). As such, the court is tasked with a "specific and narrow" review under the Act. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### III. DISCUSSION

Under Listing 12.05(C),

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpart P, App'x 1, § 12.05. In *Hancock v. Astrue*, the United States Court of Appeals for the Fourth Circuit established a three-pong test to satisfy Listing 12.05(C):

> Listing 12.05 requires a showing of "deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22" ("Prong 1"). Listing 12.05 also requires the satisfaction of one of four additional requirements identified as Requirements A–D. . . . Requirement C . . . requires "[a] valid verbal, performance, or full scale IQ of 60 through 70" ("Prong 2"), as well as "a physical or other mental impairment imposing an additional and significant work-related limitation of function" ("Prong 3").

667 F.3d 470, 473 (4th Cir. 2012).

Here, as to Listing 12.05(C), the ALJ found

> the "paragraph C" criteria of listing 12.05 are not met. The record contains conflicting IQ scores. [Plaintiff] was evaluated in 2007 and achieved a verbal score of 69, a performance score of 76 and a full-scale score of 70, placing her in the mild retardation range. (Exhibit B-1F). In March 2004, the WISC-IV revealed a verbal score of 79[,] a perceptual reasoning score of 71, a working memory score of 80, a processing speed score of 85 and full-scale IQ of 80, placing her in the low average or borderline range of intellectual functioning. Even if [Plaintiff] was considered to have valid IQ scores in the 60-70 range[,] she still does not meet the required limitations in adaptive functioning. As noted elsewhere[,] the record shows significant independence of functioning by [Plaintiff].

(ECF No. 10-13 at 23.) As far as the court can tell, the ALJ's statement that Plaintiff's "significant independence of functioning" was noted elsewhere in the ALJ's decision was a reference to the following findings by the ALJ:

> In activities of daily living, [Plaitniff] has mild restriction. [Plaintiff] admitted she is capable of caring for [a] young child, gets along with her boyfriend, reads the paper, prepares meals, cleans and cares for her personal needs. She also does laundry, sweeps, does dishes, walks, uses public transportation, shops, watches television, and spends time and gets along with others.

(*Id.* at 22.)

Upon review, the Magistrate Judge found that the ALJ's finding that Plaintiff did not meet Listing 12.05(C) was not supported by substantial evidence because "[b]ased on this record, the

ALJ's explanation regarding his determination that Plaintiff did not have deficits in adaptive functioning merely because of her 'significant independence of functioning' without further explanation is inadequate." (ECF No. 24 at 22.) The Commissioner objects to this finding, arguing the Magistrate Judge "conflate[s] the two separate components of Prong 1[6] and reweigh[s] the evidence, focusing primarily on Plaintiff's childhood education records and condition – which were not directly relevant to the ALJ's decision." (ECF No. 26 at 5.)

Initially, the court recognizes that its

> traditional function . . . in these cases is not to try them de novo or resolve mere conflicts in the evidence. However, the court[] must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational.

---

[6] The Commissioner argues that under *Hancock v. Astrue*, "If the ALJ finds: (1) 'no deficits in adaptive functioning generally,' or (2) 'no deficiency manifested itself before the age of 22,' then '[e]ither finding alone, if supported by substantial evidence, would be sufficient to support the conclusion that [the claimant] did not satisfy Prong 1.'" (ECF No. 26 at 1–2 (quoting *Hancock v. Astrue*, 667 F.3d 470, 475 (4th Cir. 2012)).) Notably, since *Hancock* was decided, it has only been cited once—in a worker's compensation case—by the Fourth Circuit, and not for the proposition advanced by the Commissioner. *See Westmoreland Coal Co. v. Stallard*, 876 F.3d 663, 670 (4th Cir. 2017) ("[It is] within the ALJ's prerogative as fact-finder to weigh the credibility of witnesses and determine the persuasiveness of their testimony." (citing *Hancock*, 667 F.3d at, 472 ("In reviewing for substantial evidence, we do not ... reweigh conflicting evidence [or] make credibility determinations . . . ."))). Additionally, one United States District Court has found the statement from *Hancock* cited by the Commissioner to be nonbinding dicta:

> because the Fourth Circuit in *Hancock* had already found that the claimant had failed to establish that she met the level of severity requirement of Listing 12.05C, the Fourth Circuit's entire discussion on the issue of whether the claimant had established that she satisfied the diagnostic definition of mental retardation was not strictly necessary to the outcome of the case and appears to have been dicta.

*Conyers v. Astrue*, No. 4:11-CV-00037-D, 2012 WL 3282329, at *12 (E.D.N.C. June 29, 2012), *adopted by*, No. 4:11-CV-00037-D, 2012 WL 3283285 (E.D.N.C. Aug. 10, 2012). But *Conyers* does acknowledge that "several other district courts have chosen to interpret *Hancock* in a manner similar to that employed by the Commissioner here." *Id.* at *11. But, because this court finds the record in the instant case contains evidence showing Plaintiff possesses deficits in adaptive functioning, it is unnecessary for the court to weigh in on this matter, and the court declines the Commissioner's invitation to wade into such murky waters.

*Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971). In finding that the ALJ's determination regarding Listing 12.05(C) was not supported by substantial evidence, the Magistrate Judge did not "reweigh" the evidence; instead she fulfilled her responsibility to give scrutiny to the whole record, which the ALJ failed to do. *See Arnold v. Sec'y of Health, Ed. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977) ("The courts, however, face a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence. Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that [their] decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" (quoting *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974))).

"As thoroughly discussed in the [Report], the ALJ failed to consider a breadth of evidence," *Goode v. Astrue*, 775 F. Supp. 2d 840, 851 (D.S.C. 2010), showing

> Plaintiff was in special education classes [(ECF No. 10-13 at 73)] before she dropped out of school after ninth grade [(ECF No. 10-7 at 2)]; she repeated first grade [R. 383]; she repeated ninth grade, making primarily grades of D or F, and had a class rank of 255/258 for the 2004–2005 school year and 229/234 for the 2005–2006 school year [(ECF No. 10-8 at 2)]; she was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and required testing accommodations involving oral exams and extended time for testing [(ECF No. 10-7 at 2)]; her grandmother reported that she was unable to count change or tell time on a regular clock when she was sixteen years old and in ninth grade [R. 383]; she has tried cutting her wrists on a few occasions [(ECF No. 10-8 at 27)]; in 2007, Plaintiff's full scale IQ score was 70, she functioned on a fourth grade level in all subject areas, her cognitive function was two standard deviations below the population norm, and she was diagnosed with mild mental retardation [(ECF No. 10-7 at 2–6)]; and Plaintiff testified that she could not add or subtract without a calculator, could not multiply or divide, could not give the right amount of money or change when purchasing items at a store, could read only basic children's books to her son and did not understand many of the words, could not read a newspaper, and never earned a driver's permit because she could not understand the questions on the test [(ECF No. 10-2 at 42–44)].

(ECF No. 24 at 21–22.) The Magistrate Judge did not reweigh this evidence because the ALJ did not discuss the overwhelming majority of this evidence,[7] neither did he "sufficiently explain the weight he ha[d] given to this obviously probative evidence" in determining Plaintiff did not meet Listing 12.05(C). *Goode*, 775 F. Supp. 2d at 851. *See also Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) ("We cannot determine if findings are unsupported by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of the relevant evidence."); *Gibson v. Berryhill*, C/A No. 1:17-CV-03316-MGL-SVH, 2018 WL 7021665, at *22 (D.S.C. Dec. 28, 2018), *adopted by*, 2019 WL 188642 (D.S.C. Jan. 14, 2019) ("We cannot affirm the ALJ's evaluation of Patterson's mental impairment because his decision did not explain how he weighed all relevant evidence."); *Cook v. Berryhill*, No. 2:16-CV-85, 2018 WL 1010485, at *6 (N.D.W. Va. Feb. 22, 2018) ("As discussed previously, this is not impermissible reweighing of the evidence, but the [M]agistrate [J]udge properly exercising the duty of the reviewing court—ensuring that there is sufficient evidence to support the decision. In discussing the 'highly selective summary of the evidence,' the [M]agistrate [J]udge did not reweigh the evidence, but identified substantial contradictory evidence that the ALJ disregarded without adequate explanation."). This is particularly problematic given that "case law shows that the issue of whether a claimant manifested deficits in adaptive functioning during the developmental period is a *fact-specific inquiry* with few bright-line rules." *Stanfield v. Berryhill*, Civil Action No. 2:17-CV-00362-TMC-MGB, 2018 WL 3687971, at *6 (D.S.C. July 18, 2018),

---

[7] The ALJ did account for Plaintiff functioning on a fourth-grade level in the RFC. (*See* ECF No. 10-13 at 23–24.)

13

*adopted by* 2018 WL 3660114 (D.S.C. Aug. 2, 2018) (emphasis added). *See also Salmons v. Astrue*, No. 5:10CV195-RLV, 2012 WL 1884485, at *5 (W.D.N.C. May 23, 2012) ("The Court turns now to adaptive functioning, which entails a *fact-intensive inquiry* concerning the ability of the claimant to cope with common life demands and achieve certain standards of personal independence." (emphasis added)). Moreover,

> while evidence of an individual's ability to live independently and hold a job may certainly support a conclusion that the individual is functioning at a higher level than his IQ score suggests, thereby precluding a finding of [intellectual disability], *see, e.g., Hancock v. Astrue*, 667 F.3d 470, 474–76 (4th Cir. 2012), the fact that a claimant is able to work, raise a family, and otherwise live successfully in the community does not necessarily preclude a finding of mild [intellectual disability] where other deficits in adaptive functioning are present, *see Davis v. Astrue*, 2008 WL 1826493, at *4 (D.S.C. Apr. 23, 2008) (fact that the plaintiff had worked for 33 years as a cleaning lady did not bar her award of benefits where her impairment met Listing 12.05C).

*Glenn v. Colvin*, No. CIV.A. 8:13-2099-BHH, 2015 WL 628518, at *3 (D.S.C. Feb. 12, 2015). Thus, although the ALJ found Plaintiff could care for a young child, prepare meals, do chores, clean and care for her personal needs, shop, and watch television, this did not preclude a finding of intellectual disability under Listing 12.05(C) because evidence of other deficits in adaptive functioning was present in the record. *See id.* (*See also* ECF No. 24 at 21–22.)

Additionally, regarding Prong 2, the Magistrate Judge observed that the ALJ's decision "fails to explain how [he] resolved the conflict between what he found to be conflicting IQ scores." (*Id.* at 22.) As stated by the Magistrate Judge, the ALJ likely did not resolve this conflict because he concluded Plaintiff "d[id] not meet the required limitations in adaptive functioning." (ECF No. 10-13 at 23.) However,

> even though IQ range constitutes the Prong 2 determination, the actual score is often considered in conjunction with the level of adaptive functioning. *See, e.g., Conyers v. Astrue,* No. 4:11–CV–00037–D, 2012 WL 3282329, at *8 (June 29, 2012), *adopted in* 2012 WL 3283285 (E.D.N.C. Aug. 10, 2012); *Holtsclaw v. Astrue*, No. 1:10CV199, 2011 WL 6935499, at *4 (W.D.N.C. Dec. 30, 2011) (both

discussing IQ score when considering the level of adaptive functioning at the Prong 1 inquiry); *see also Norris v. Astrue*, No. 7:07–CV–184–FL, 2008 WL 4911794, at *3 (E.D.N.C. Nov. 14, 2008) (noting that a diagnosis of mental retardation is possible with an IQ score of 70–75 when there are significant deficits in adaptive behavior and may not be supported even with an IQ score of below 70 when there are no significant deficits).

*Richardson v. Colvin*, No. 8:12-CV-03507-JDA, 2014 WL 793069, at *11 (D.S.C. Feb. 25, 2014).

Furthermore, Plaintiff persuasively challenges whether her March 2004 IQ scores should even be considered in determining whether she meets Listing 12.05(C):

> Plaintiff's 2004 test scores were obtained when she was 15 years old; because these scores were obtained prior to age 16, they were valid for only two years. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(D)(10) (eff. August 12, 2015 to May 23, 2016) ("IQ test results obtained between ages 7 and 16 should be considered current . . . for 2 years when the IQ is 40 or above."). Plaintiff's 2007 test scores, obtained when she was 18 years old, represent an accurate representation of her actual aptitude because they were obtained after age 16. *See id.* ("Generally, the results of IQ test tend to stabilize by the age of 16.")

(ECF No. 19 at 21.) If Plaintiff's March 2004 IQ scores are invalid, than the only IQ scores in the record would be those from 2007, which were within the range of intellectual disability under Listing 12.05(C).[8] Accordingly, after careful review and consideration, the court cannot conclude that the ALJ's determination that Plaintiff did not meet or equal Listing 12.05 is supported by substantial evidence. *Gordon*, 725 F.2d at 235 ("We cannot determine if findings are unsupported by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of the relevant evidence."); *Thomas*, 331 F.2d at 543 ("If . . . reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, the courts are equally bound to decide against the [Commissioner]."); *Gibson*, 2018 WL 7021665, at *22 (D.S.C. Dec. 28, 2018), *adopted by*, 2019 WL 188642 (D.S.C. Jan. 14, 2019) ("We cannot affirm

---

[8] However, even if the March 2004 scores are valid, "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpart P, App'x 1 § 12.00(D)(6)(c).

15

the ALJ's evaluation of Patterson's mental impairment because his decision did not explain how he weighed all relevant evidence.")

The Commissioner's second objection is that "[r]eversal for payment of benefits is not the appropriate remedy" because there remain factual issues to resolve. (ECF No. 26 at 6.) The court agrees and sustains the Commissioner's second objection. Although the court acknowledges that a substantial amount of time has passed since Plaintiff applied for benefits, "[b]ecause there is inconsistent evidence regarding Plaintiff's intellectual functioning, the weighing of that evidence and application to Listing 12.05C is properly left to the ALJ." *Salmons*, 2012 WL 1884485, at *8 (W.D.N.C. May 23, 2012). *See also Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. 2016) ("[W]e remand to avoid engaging in fact-finding 'in the first instance' and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review in the event the case returns to us." (quoting *Radford*, 734 F.3d at 296)); *Ragin v. Colvin*, No. 5:14-CV-851-D, 2016 WL 2600508, at *8 (E.D.N.C. Apr. 14, 2016), *adopted by*, No. 5:14-CV-851-D, 2016 WL 2347872 (E.D.N.C. May 3, 2016) ("The court concludes that the ALJ's failure to clearly express the determination, if any, he made regarding plaintiff's satisfaction of the diagnostic description in Listing 12.05C precludes the court from determining whether his determination that plaintiff does not meet that listing is supported by substantial evidence. Remand is accordingly required on this ground, independent of the similar deficiency regarding the IQ requirement of Listing 12.05C previously discussed."); *Smith v. Colvin*, No. CV 4:14-4320-DCN-TER, 2016 WL 8672765, at *8 (D.S.C. Jan. 15, 2016) ("Without a thorough analysis by the ALJ of the relevant facts in the record, it is impossible to determine whether the ALJ's finding that the plaintiff's impairment does not meet a listing is based upon substantial evidence. . . . Accordingly, upon remand, the ALJ should be instructed to . . . specifically address the evidence of record in

conducting a factually based inquiry as to whether Plaintiff can establish 'deficits in adaptive functioning initially manifested during the developmental period . . . .'").

## IV. CONCLUSION

After a thorough review of the Commissioner's Objection (ECF No. 26) and the Magistrate Judge's Report (ECF No. 24), the court **ACCEPTS IN PART** and **REJCTS IN PART** the Magistrate Judge's Report and Recommendation (ECF No. 24), incorporating it herein, and **REVERSES** and **REMANDS** this matter for further administrative proceedings consistent with this Order.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 29, 2019
Columbia, South Carolina